**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TERRY L. FREDERICK and** ) | |
| **DONNA F. FREDERICK,** ) | |
|  ) | |
| **Plaintiffs,** ) | |
|  ) | |
| v. ) | **Case No. 06-1332-MLB** |
|  ) | |
| **SWIFT TRANSPORTATION CO., INC.,** ) | |
|  ) | |
| **Defendant.** ) | |
|  ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion to compel defendant to provide "full and fair responses" to eleven of plaintiffs' production requests. (Doc. 20). For the reasons set forth below, the motion shall be GRANTED IN PART and DENIED IN PART.

### Background

This lawsuit arises from the collision of two tractor/trailer rigs. Highly summarized, plaintiffs allege that Robyn Getchel was driving a tractor/trailer rig eastbound on US-54 in Quay County, New Mexico for defendant Swift Transportation.[1] Terry Frederick was a passenger in a Yellow Transportation tractor/trailer rig that was also headed eastbound on

---

[1] Although the accident occurred in New Mexico, plaintiffs elected to file this action in Kansas where they reside and defendant operates a truck terminal.

US-54 and following the Swift truck. Plaintiffs allege that Getchel negligently and recklessly attempted to turn left into a rest area on the north side of US-54 and caused the two trucks to collide.[2] Terry Frederick seeks damages for his personal injuries and Donna Frederick, his wife, seeks damages for loss of consortium. In addition to alleging that Swift is vicariously liable for Getchel's negligence, plaintiffs contend that defendant is also liable for its own negligence in "hiring, retaining, supervising, education, training, and instructing Ms. Getchel on the reasonable, safe operation of tractor/trailer rigs."  (Doc. 1).

## Motion to Compel

As noted above, plaintiffs move to compel defendant to fully answer Production Request Nos. 3, 4, 9, 11, 13, 15, 16, 33-35, and 37. The discovery requests and arguments are addressed below in the order set forth in the parties' briefs.

**1. Driver Logs and Log Audits of Any Co-Driver Operating with Robyn Getchel (Production Request Nos. 9 and 11)**

Production Request No. 9 asks for the daily logs and "70 hour summaries" for any co-driver operating with Robyn Getchel from September 16, 2005 to the present.[3] Production

---

[2] The driver of the Yellow Transportation truck apparently died at the scene of the accident. The accident occurred at approximately 1:30 a.m. Defendant contends that Getchel properly signaled a left-hand turn and that Yellow Transportation's truck struck Swift's trailer at full speed.

[3] Getchel was employed by defendant from September 6, 2005 to March 27, 2006. Accordingly, co-driver information is limited to a six-month period.

Request No. 11 requests all administrative log audits and investigation documents concerning the driving logs submitted by Getchel's co-drivers. Defendant opposes the motion, arguing that the requests are overly broad and "not reasonably calculated to lead to the discovery of admissible evidence." (Doc. 24, p. 4).[4] More specifically, defendant argues that the requested information "has absolutely nothing to do with the conduct of Ms. Getchel in the operation of the Swift unit on the night in question." (Doc. 24, p. 4).

Defendant's argument that the requested information is overly broad and lacking in relevance is not persuasive. Plaintiffs have alleged that defendant was negligent in the hiring, training and supervision of Getchel. Because defendant's supervision of Getchel is in issue, the logs, 70-hour summaries, and audits of Getchel' *co-drivers* will assist plaintiffs in determining the accuracy of *Getchel's* duty-status records.[5] Therefore, Production Request Nos. 9 and 11 are relevant and plaintiffs' motion to compel shall be GRANTED.

## 2. Daily Fuel Invoices of Robyn Getchel and any Co-Driver

---

[4] Defendant noted that its initial discovery responses contained other objections and that "each of its objections are proper and [it] does not waive any of them." (Doc. 24, p. 3). However, contrary to defendant's conclusory assertion, general objections to discovery that are not argued are deemed waived by the court. See, e.g., Johnson v. Kraft Foods North America, Inc., 238 F.R.D. 648, 651 (D. Kan. 2006)(general objection is waived if no meaningful effort is made to show application to discovery request).

[5] For example, evidence that Getchel regularly falsified her log and duty reports may establish that Swift ignored safety requirements when supervising Getchel. This example is cited only to show the relevance of the discovery requests. The court has no evidence before it at this time indicating that any logs or records were inaccurate or falsified.

**(Production Request Nos. 3 and 4)**

Production Request Nos. 3 and 4 seek trip and operational documents for Robyn Getchel and her tractor/trailer rig from September 16, 2005 to March 16, 2006. Specifically, plaintiffs seek the daily fuel invoices (including receipts and fax signature pages for Robyn Getchel and any co-driver). Defendant represents that it has produced "all fuel receipts and related documentation in Swift's possession, custody and control related to Robyn Getchel and the tractor/trailer involved in the subject collision" and "can produce no additional items." Notwithstanding this representation, plaintiffs argue that there must be more because (1) federal regulations require defendant to maintain fuel receipt records and (2) defendant was able to produce a one-week fuel report but produced no receipts. Because defendant represents that it has produced all records in its possession, custody, and control, the motion to compel with *respect to Robyn Getchel* shall be DENIED.[6]

Plaintiffs also argue that defendant has failed to produce fuel receipts for Robyn's co-drivers from September 16, 2005 to March 16, 2006. Defendant counters that the production requests do not ask for "co-driver" receipts. The court agrees that the request does not literally request co-driver receipts. However, plaintiffs did request the production of documents (including receipts) for any tractor/trailer rig Getchel drove from September 2005 to March 2006. Such a request includes any co-driver's receipts related to Getchel's rig for

---

[6] An order to produce is not necessary because the court has authority to impose sanctions should it later be shown that defendant made misrepresentations in responding to discovery and plaintiffs' motion.

-4-

the six month period she drove for defendant and plaintiffs' motion to compel such information shall be GRANTED.

### 3. Position History Data
### (Production Request No. 3)

Defendant argues that it produced position data on Getchel's truck from March 9, 2006 to March 17, 2006 and that the motion concerning Production Request No. 3 is moot. However, plaintiffs argue that the motion is *not* moot because plaintiffs requested position data from September 16, 2005 to March 16, 2006 in order to determine the accuracy of Getchel's travel and time logs. Because position data for the six month time period is relevant, the motion to compel such information shall be GRANTED.

### 4. Log Audits of Robyn Getchel
### (Production Request No. 10)

Production Request No. 10 asks for documents concerning investigations or audits of Robyn Getchel's logs. However, defendant states in its response brief that it "has no log audits of Robyn Getchel in its possession, custody, or control to produce." (Doc. 24, p. 8). Notwithstanding this statement, plaintiffs request an order directing that such documents be produced "so that plaintiffs may pursue adequate remedies if plaintiffs learn of the existence of such documents at a later date." (Doc. 27, p. 10). Plaintiffs' request and rationale are rejected. Defendant unequivocally states that it does not have such materials and the motion to compel Production Request No. 10 shall be DENIED.

**5. Results of Post Accident Drug and Alcohol Testing of Robyn Getchel
(Production Request No. 15)**

Production Request No. 15 requests the results of all pre-employment, random, for cause, or post-accident drug and alcohol testing of Robyn Getchel. Defendant opposes the motion, arguing that the information is irrelevant because plaintiffs' complaint does not contain a specific allegation that Getchel was "impaired." Defendant's argument is summarily rejected. The issue of alcohol and drug impairment at the time of the accident is relevant to the issue of Getchel's negligence. Moreover, documents revealing defendant's knowledge of a failed test for alcohol or drugs is relevant to plaintiffs' allegations that defendant was negligent in hiring and supervising Getchel.[7] Accordingly, the motion to compel shall be GRANTED.

**6. Logs and Driver Qualification Files for the "Qualified Driver" Training Robyn Getchel
(Production Request Nos. 9 and 16)**

Plaintiffs seeks to compel the logs and files for the "driving trainers" who instructed Getchel. Defendant opposes the motion, arguing that a distinction exists between "co-drivers" and "qualified driver trainers." More importantly, defendant argues that the files of trainers include all sorts of personal information unrelated to their qualifications or logs. The

---

[7] Again, there is no evidence before the court that Getchel was under the influence of alcohol or drugs. However, this is discovery and plaintiffs are entitled to explore the possible causes of the accident and whether defendant was negligent in hiring and supervising Getchel.

court agrees that the request for the *complete* personnel files of the trainers is excessive. Accordingly, the motion shall be GRANTED IN PART and defendant shall produce the trainers' daily logs when operating with Getchel and only those portions of their files applicable to the trainers' fitness to train Getchel.

### 7. Complete Driver's Qualification File of Robyn Getchel (Production Request No. 13)

Production Request No. 13 asks for any documents added to Getchel's "driver qualification file" from March 16, 2006 to the present, as presently maintained by Swift Transportation. Defendant's first objection relates to alcohol and drug tests which were discussed above and rejected. According, plaintiffs' motion to compel any drug and alcohol test results/reports is GRANTED.

Defendant's second objection concerns five documents created after the accident which defendant contends are protected by the work product doctrine. Because both parties suggest that the documents be reviewed in camera, the court will order defendant to submit the records for an in camera review before ruling on the dispute. Defendant shall submit the documents for the court's in camera review on or before **July 26, 2007**.

### 8. Physician-Patient Privilege

Plaintiffs move to compel defendant to produce four documents which defendant contends are protected from disclosure by Robyn Getchel's physician-patient privilege. The

-7-

court rejects defendant's assertion of the physician-patient privilege because Document Nos. 1 & 2 are medical reports prepared *for defendant's review* as a licensing requirement pursuant to federal regulations. Equally important, Getchel waived any privilege by submitting them to defendant for employment purposes. Doc. No. 3 appears to be an *authorization* to release medical records and defendant fails to show that document qualifies for the physician-patient privilege. Finally, Doc. No. 4 is a "physician activity report regarding Robyn Getchel from Concentra Occupational Med CTRS-CA." Again, Getchel's disclosure of medical information to defendant waives any claim of privilege.

### 9. Manuals and Training Materials
**(Production Request Nos. 33-34 and 37)**

Plaintiffs request production of various company manuals related to operations, safety, training, and education. Defendant refuses to produce the documents without a protective order, claiming that the manuals contain confidential commercial information. Plaintiffs oppose the protective order, arguing that defendant has failed to show that the manuals rise to the level of "trade secrets." Plaintiffs also argue that defendant's request for a protective order is untimely.

Plaintiffs' motion to compel shall be GRANTED. First, defendant's request for a protective order is untimely. Plaintiffs properly served defendant with a request for documents which are unquestionably relevant. Although defendant responded to plaintiffs' initial discovery request stating that it would produce "subject to a protective order or

confidentiality agreement," defendant failed to take the necessary steps to secure a protective order from the court until after plaintiffs moved to compel production.[8] The burden is on defendant, the party asserting the need for a protective order, to secure such an order from the court.[9] Waiting until plaintiffs move to compel before asking the court for a protective order appears to be an attempt to shift the burden of securing a protective order to plaintiffs. The court rejects this approach.

Equally important, the court is not persuaded that defendant has carried its burden of showing the need for a protective order. With the exception of defendant's conclusory assertion that the manuals contain "confidential commercial information," defendant offers no basis to show that the documents warrant a protective order. In a nutshell, the request for a protective order is "too little, too late." Accordingly, the motion to compel the manuals and documents responsive to Production Request Nos. 33-35 and 37 shall be **GRANTED.**

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 20)** is

---

[8] The parties informally discussed the wording of a protective order but were unable to reach an agreement. Apparently, one of the stumbling blocks was a disagreement over defendant's insistence that the protective order contain a "non-sharing" agreement to prevent the use of the information in any other case against defendant. The dispute over the "non-sharing" provision has no immediate relevance to the production issue before this court.

[9] Defendant's argument that plaintiffs suffered no prejudice by the belated request for a protective order is misguided. First, "lack of prejudice" is not the standard for a protective order. Second, plaintiffs were prejudiced by defendant's lack of action because plaintiffs were required to expend resources compelling production of the materials. No explanation has been offered for defendant's delay in moving for a protective order.

**GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above. The deadline for defendant to produce the materials ordered herein is **August 6, 2007.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 16th day of July 2007.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge