**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TERRY L. FREDERICK and** ) | |
| **DONNA F. FREDERICK,** ) | |
|                                         ) | |
| **Plaintiffs,** ) | |
|                                         ) | |
| v.                                 ) | Case No. 06-1332-MLB |
|                                         ) | |
| **SWIFT TRANSPORTATION CO., INC.,** ) | |
|                                         ) | |
| **Defendant.** ) | |
|                                         ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' (1) second motion to compel and (2) "motion for order to obtain records." (Doc. 94, 107). Defendant opposes both motions. For the reasons set forth below, plaintiffs' second motion to compel shall be GRANTED IN PART and DENIED IN PART and the motion for records shall be GRANTED.

## Background

This lawsuit arises from the collision of two tractor/trailer rigs. Highly summarized, plaintiffs allege that Robyn Getchel was driving a tractor/trailer rig eastbound on US-54 in Quay County, New Mexico for defendant Swift Transportation.[1] Terry Frederick was a

---

[1] Although the accident occurred in New Mexico, plaintiffs elected to file this action in Kansas where they reside and defendant operates a truck terminal.

passenger in a Yellow Transportation tractor/trailer rig that was also headed eastbound on US-54 following the Swift truck. Plaintiffs allege that Getchel negligently and recklessly attempted to turn left into a rest area on the north side of US-54 which caused the two trucks to collide.[2] Terry Frederick seeks damages for his personal injuries and Donna Frederick, his wife, seeks damages for loss of consortium. In addition to alleging that Swift is vicariously liable for Getchel's negligence, plaintiffs contend that defendant is also liable for its own negligence in "hiring, retaining, supervising, educating, training, and instructing Ms. Getchel on the reasonable, safe operation of tractor/trailer rigs." (Doc. 1).

## Plaintiffs' Second Motion to Compel

Pursuant to Fed. R. Civ. P. 37(b), plaintiffs move to compel Swift to comply with the Court's July 16, 2007 Memorandum and Order (Doc. 28). Specifically, plaintiffs argue that relevant information has not been produced and request an order compelling Swift to conduct a computer database search *in the presence of plaintiffs' counsel and/or plaintiffs' computer expert.* If the relevant electronically stored information is determined to be unavailable, plaintiffs ask that their computer expert be granted access to Swift's information system so that recovery efforts can be made to retrieve the deleted data. Swift opposes the motion, arguing that it has searched electronically for the requested information and it does not exist.

---

[2] The driver of the Yellow Transportation truck apparently died at the scene of the accident. The accident occurred at approximately 1:30 a.m. Defendant contends that Getchel properly signaled a left-hand turn and that Yellow Transportation's truck struck Swift's trailer at full speed.

Swift also argues that the requested relief is premature and offers to make its Director of IT Infrastructure, David Tomlin, available for deposition to (1) clarify Swift's document retention policies, (2) the efforts Tomlin personally made to determine whether additional, responsive, electronically stored data is in existence, and (3) the results of Tomlin's search. The following background provides context for plaintiffs' requested relief.

The July 16 Memorandum and Order granted in part and denied in part plaintiffs' motion to compel the production of records related to Robyn Getchel's employment with Swift. Parts of the motion to compel were denied based on Swift's representation that (1) it had produced all available documents it could locate or (2) no such documents were in Swift's possession or control. However, plaintiffs argue that recent discovery contradicts Swift's representations concerning the absence of documents.

For example, Swift's corporate safety advisor and former vice president of safety, Dennis Richie, recently testified that trip and operational documents (including fuel records) are scanned and stored electronically and retained for a number of years for tax purposes.[3] Similarly, Getchel's supervisor, Ronald Taylor, testified that trip and operational documents (including fuel receipts) for each trip are mailed to Swift's corporate office where they are electronically scanned and stored in a database. Taylor also testified that he could "go back indefinitely" on the computer and look at the day-to-day activities of a former driver.

---

[3] The July 16 Memorandum and Order held that operational documents were relevant and discoverable. Because the relevance of the requested documents is no longer an issue, the court limits its analysis to whether or not plaintiffs will be allowed to test and/or inspect Swift's electronically stored records.

Swift counters that this motion is premature because it is the first request by plaintiffs to inspect Swift's information system and the parties have not engaged in meaningful discussions concerning an inspection of databases. More importantly, one week after receipt of plaintiffs' motion, Swift conducted another search of its electronic data storage system for any and all information regarding Robyn Getchel. David Tomlin provided an affidavit explaining his search methods and his conclusion that the electronic records concerning Getchel have already been produced in paper form and that no additional documents were discovered. Swift also counters Richie and Taylor's deposition testimony, arguing that the two men "have no expertise in computer forensics or information technology" and that "plaintiffs failed to establish during the depositions of those witnesses that any one of them possesses specialized knowledge regarding Swift electronic data storage systems." Doc. 106, p. 4, footnote 1.

Addressing defendant's arguments in reverse order, Swift's assertion that Richie and Taylor "have no expertise in computer forensics" is of no consequence. Ronald Taylor, one of Getchel's supervisors, was specific in his deposition testimony concerning (1) the day-to-day trip information he is able to view on Swift's computers and (2) that he is able to "go back indefinitely." Regardless of his level of computer expertise, Taylor is qualified to testify as to what he sees on his computer screen. Similarly, the lack of "computer expertise" does not diminish Dennis Ritchie's deposition testimony. Ritchie, a former corporate vice president in charge of safety, testified that trip and operational documents are scanned and stored electronically and that fuel records are saved for a number of years for tax purposes.

Although Swift challenges Ritchie's computer expertise, it does not directly challenge his testimony concerning the scanning and preservation of fuel records.

The problem with Swift's reliance on Tomlin's affidavit is that there is an unexplained inconsistency between (1) the testimony of two Swift employees describing the information that should exist in electronic storage and (2) Tomlin's statement as to what he was able to find.[4] Furthermore, the volume of "missing" documents is significant. For example, Swift produced a summary report showing that Getchel logged 45,490 driver miles and consumed 7,836 gallons of fuel. However, Swift produced only two fuel receipts totaling 489 gallons. This is a significant discrepancy in light of Richie's testimony that fuel records would be retained for a number of years for tax purposes.[5] Additionally, Swift has failed to produce "operational documents" for 20 of the 75 trips Getchel took during her six months of employment with Swift.

That court is satisfied that these inconsistencies justify for further investigation of Swift's electronic data and plaintiffs' request for an order compelling Swift to conduct a search of its information systems in the presence of and/or participation of plaintiffs' counsel

---

[4] Stephanie Soukesian, another Swift employee and "driver manager," provided similar deposition testimony, explaining that a driver's fuel history, including the amount, time, and purchase location, are available to managers and can be located by a computer search using the driver's number, trip number, or truck number. However, it is not clear from Ms. Soukesian's testimony how long this information is preserved.

[5] Plaintiffs' counsel sent Swift a letter 21 days after the accident requesting that operational records be preserved for purposes of litigation. Based on Richie's testimony that fuel records are maintained for a number of years, the records should be in existence.

and their consulting expert shall be granted. Plaintiffs are also granted leave to depose Tomlin concerning Swift's document retention policies, computer infrastructure, and search techniques.[6] However, plaintiffs' alternative request for access to Swift's information system shall be denied without prejudice at this time. Access to a party's information system raises a number of technical, legal, and practical problems which have not been addressed by the parties in this motion.[7]

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 94)** is **GRANTED IN PART and DENIED IN PART**, consistent with the rulings set forth above. The deadline for defendant to comply with this order is **May 19, 2008.**

### Plaintiffs' Motion for Records

Robyn Getchel tested positive for methamphetamine after the accident that is the subject of this lawsuit. Although Getchel admits that she abused methamphetamine and cocaine in the 1980's and early 90's, she testified during her deposition that she has not used illegal drugs since October of 1994. Getchel also testified that she was arrested and

---

[6] An informal interview with Mr. Tomlin may be more expeditious and this order does not foreclose the parties from agreeing to informal discovery concerning the electronic storage of data.

[7] For example, no search protocol has been described and it is unclear how privileged information in the database would be addressed.

convicted of forgery in California but did not remember how many times she had been convicted. In order to test Getchel's truthfulness, plaintiffs seek Getchel's criminal history and records from the state of California. Because the Keeper of Records for the California Department of Justice will apparently only release the information pursuant to a court order, plaintiffs move for an order authorizing the Keeper of Records to produce the records to plaintiffs' counsel. Defendant concedes that plaintiffs are entitled to see the records governing "any crime dealing with truth or veracity in the last ten years" and argue that the order should be limited to crimes involving theft or forgery from January 1, 1998 to the present. (Doc. 121, p. 4).

Defendant's proposal to limit the order to crimes involving theft or forgery for a ten-year period is not persuasive. This is discovery and plaintiffs are entitled to see Getchel's criminal record to determine whether any of Getchel's convictions or plea agreements might lead to admissible evidence. Whether *any* of Getchel's convictions will be admissible at trial is a matter for the trial judge to resolve. Accordingly, defendant's requested limitations are rejected and plaintiffs' motion shall be GRANTED.

**IT IS THEREFORE ORDERED** that plaintiffs' motion for an order authorizing the Keeper of Records for the California Department of Justice to produce certain records concerning Robyn L. Getchel **(Doc. 107)** is **GRANTED.** The Order of Production is filed separately because it contains Getchel's Social Security number and other personal information and lists in detail the information to be produced. The Production Order shall

be available to counsel for the parties and the California Keeper of Records but otherwise sealed.

**IT IS FURTHER ORDERED** that plaintiffs' request that the court serve the order of production on the Keeper of Records for the California Department of Justice is **REJECTED.** Plaintiffs shall serve the Order.[8]

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

**IT IS SO ORDERED.**

---

[8] The Keeper of Records for the California Department of Justice has not been served with this motion; therefore, this ruling is without prejudice to any objections the Keeper of Records may have to the production order.

Dated at Wichita, Kansas this 2nd day of May 2008.

                                                S/ Karen M. Humphreys

                                                _____
                                                KAREN M. HUMPHREYS
                                                United States Magistrate Judge