## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TERRY L. FREDERICK and<br>DONNA F. FREDERICK,      )<br>                     )<br>          Plaintiff,   )<br>                     )<br>v.                     )<br>                     )<br>SWIFT TRANSPORTATION CO., INC.,  )<br>                     )<br>          Defendant.  )<br>_____)| **CIVIL ACTION**<br><br>No.  06-01332-MLB |

### MEMORANDUM AND ORDER

Before the court is Swift Transportation Co., Inc.'s ("Swift") motion to exclude the testimony of Terry and Donna Fredericks' ("Fredericks") expert, Art Atkinson (Docs. 212, 213). A response has been filed and the matter is ripe for decision. (Doc. 234). A Daubert hearing was held on November 3, 2008. Swift's motion is GRANTED in part and DENIED in part for the reasons stated more fully herein.

## I. FACTS

This is a personal injury action arising out of a tractor-trailer collision. Fredericks have asserted several claims including: 1) Swift's employee Getchel negligently caused the accident while employed with Swift and acting within the course and scope of her employment; 2) Getchel was negligent per se in that she violated N.M.S.A. § 66-8-102 and 49 C.F.R. § 382.213; and 3) Swift was negligent in hiring, training, and supervising Getchel. Fredericks hired Art Atkinson, an expert on safety and trucking regulations, who prepared a written report setting forth his opinions regarding Swift's

compliance with federal and industry standards in hiring, training, and retaining Getchel.  (Doc. 213-3).  By its motion, Swift seeks to exclude Mr. Atkinson's opinions.  In reaching its decision, the court has considered Fed. R. Evid. 403, 702 and 703, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) and applicable Tenth Circuit decisions.  On November 3, 2008, the court heard the testimony of Mr. Atkinson as contemplated by Goebel v. Denver and Rio Grande Western Railroad Company, 215 F.3d 1083, 1087 (10th Cir. 2000) and Tuato v. Brown, 85 Fed. Appx. 674, 2003 WL 23032371 (10th Cir. Dec. 30, 2003).

## II. STANDARDS

"Rule 702 sets forth the standard for admission of expert testimony," U.S. v. Fredette, 315 F.3d 1235, 1239 (10th Cir. 2003), and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993).  Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The standards embraced by Rule 702 and Daubert apply equally to scientific testimony and other testimony of a technical nature.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 , 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999).  A party

offering an expert witness bears "the burden of demonstrating to the district court that [the proffered expert is] qualified to render an expert opinion." <u>United States v. Nacchio</u>, 519 F.3d 1140, 1171-72 (10th Cir. 2008); <u>see also</u> <u>Ralston v. Smith & Nephew Richards, Inc.</u>, 275 F.3d 965, 970 (10th Cir. 2001).  Still, the court's "gatekeeping" role favors admissibility of expert testimony when it is reliable and relevant.  <u>Burton v. R.J. Reynolds Tobacco Company</u>, 183 F. Supp. 2d 1308, 1311 (D. Kan. 2002).  Any issue of credibility or weight of the expert's testimony belongs to the trier of fact.

"To fulfill its gatekeeping role, a district court must therefore conduct a two-part inquiry.  First, a district court must determine if the expert's proffered testimony ... has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" <u>Bitler v. A.O. Smith Corp.</u>, 400 F.3d 1227, 1232-33 (10th Cir. 2004) (quoting <u>Daubert</u>, 509 U.S. at 592.).  This first step includes reviewing the scientific validity behind the expert's reasoning and methodology.  <u>Id.</u> at 1233. The court may consider, among others, the following four factors: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has 'general acceptance.'  <u>Id.</u>  Second, in fulfilling its <u>Daubert</u> obligations a trial court must also conduct a further inquiry into whether proposed testimony is sufficiently 'relevant to the task at hand[,]'" that is the expert's opinion  is material and will assist the trier of fact. <u>Id.</u> at 1234.

## III. ANALYSIS

Swift does not oppose Mr. Atkinson's qualifications as an expert on trucking safety, which includes motor carrier safety regulations and industry standards. Swift, however, argues that Mr. Atkinson did not utilize reliable methodologies in forming his opinions and further that they are irrelevant. Specifically, Swift takes issue with Mr. Atkinson's opinions regarding: 1)the absence of evidence indicating that Bottroff was microsleeping at the time of impact; 2) Ms. Getchel's judgment and driving ability were impaired because she was under the influence of methamphetamine; 3) Swift's mentor program was inadequate; 4) Swift did not comply with industry standards[1] and good practice when it hired Ms. Getchel after she failed her driving test on several occasions; and 5) Swift's June 24, 2001, compliance review.[2]

### A. Microsleep[3]

Swift has not specifically alleged as an affirmative defense that Bottorff was microsleeping at the time of impact. Neither Swift nor

---

[1]The court may have misunderstood Swift's counsel to say that under New Mexico law, evidence of failure to comply with industry standards is not admissible on issues of negligence. If that is Swift's position, i.e. that the evidence is inadmissible, it must immediately provide the court with applicable New Mexico authority. In Kansas, evidence of conformity with an industry standard is not an absolute defense to negligence but is nevertheless admissible as evidence of due care. Cerretti v. Flint Hills Rural Elec. Co-op. Ass'n, 251 Kan. 347, 352-3, 837 P.2d 330, 336 (1992). Obviously, then, a failure to comply with an industry standard is some, but not conclusive, evidence of a lack of due care.

[2]Plaintiffs have agreed to exclude Mr. Atkinson's opinion regarding seat belts.

[3]Mr. Atkinson described microsleep as elements or manifestation of fatigue where a person dozes off for seconds and then reawakens.

Fredericks have produced evidence to show Bottorff was microsleeping. As such, Mr. Atkinson's opinion suggesting an absence of microsleeping is not presently relevant.  Swift, however, claims that Bottorff was driving inattentively just prior to the accident, which its counsel stated might include being asleep.  Therefore, the court finds that the relevance of Mr. Atkinson's testimony regarding microsleep is dependent on Swift presenting evidence at trial that Bottorff was inattentive because he fell asleep.  If Swift suggests in opening statement and/or presents evidence that Bottorff was asleep at the time of the accident (as opposed to not keeping a proper lookout or otherwise driving inattentively), Fredericks may present Mr. Atkinson's testimony regarding microsleep.

### B. Ms. Getchel's Impairment

Fredericks assert that Mr. Atkinson will not be offering expert testimony regarding Ms. Getchel's dosage of methamphetamine and level of impairment from a medical or scientific standpoint.  Instead, Fredericks plan on utilizing Mr. Atkinson's expert opinion to show that Ms. Getchel violated federal regulations and industry standards when she drove a commercial motor carrier while impaired by methamphetamine.  Mr. Atkinson testified that the trucking industry recognizes a presumption of impairment when there is any substance in the bloodstream or urine.  The court finds that Mr. Atkinson's testimony is safety, not medically, related and therefore he may testify how methamphetamine affects driving ability according to the trucking industry safety standards.

### C. Swift's Mentor Program

Swift argues that Mr. Atkinson's opinion about Swift's mentor

-5-

program or driving finishing training is the product of unreliable methodology because there are no federal regulations or uniform standards governing additional training of professional drivers. Fredericks agree that there is no federal regulation that requires a specific program to exist or contain various factors and further agree that Swift's implemented program complied with Federal Motor Carrier Safety Regulation ("FMCSR") Part 391.11(b)(3) and good industry practice.[4]   Fredericks, however, claim Swift did not administer its training program in accordance with its own standards, which violated good industry practice.

The court finds that Mr. Atkinson's opinion about Swift's mentor program is not a <u>Daubert</u> issue, but one of relevance.[5]   Mr. Atkinson testified that FMCSR Part 391.11(b)(3) requires commercial trucking companies to provide some type of driving finishing program to insure that its drivers, who already obtained their Commercial Driver's License ("CDL"), operate a motor carrier safely and competently.   The precise methods used to train truck drivers, however, are left to the trucking company's discretion.   Evidence that Swift failed to properly administer its own mentor program is probably relevant to Fredericks' negligence claims, but it does not follow that Swift violated some uniform industry standard when none exists.   Moreover, a jury is

---

[4]Qualifications for commercial drivers are listed in FMCSR Part 391.11, which requires that drivers "[c]an, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives[.]"   49 C.F.R. § 391.11(b)(3).   The USDOT has interpreted this provision to require more training than merely having a CDL.   (Doc. 234 at 12).

[5]Actually, none of Swift's challenges to Mr. Atkinson's opinions are true <u>Daubert</u> challenges.   Rather, they fall more into the category of in limine motions.

capable of considering the ramifications of Swift's failure to comply with its training policy without the assistance of expert testimony.

### D. Ms. Getchel's Prior Exams

Swift requests this court to exclude Mr. Atkinson's opinion regarding Swift's hiring of Ms. Getchel after having knowledge that she failed her driving exam multiple times.  Mr. Atkinson testified that a commercial driving exam consists of both a written test and driving examination.  Ms. Getchel failed the written portion three times before passing.  She then failed the driving portion three additional times.  Mr. Atkinson testified that in his opinion, Swift should not have hired Ms. Getchel because it is not good industry practice to hire a driver who has failed that many times.

Mr. Atkinson also testified that there is no federal regulation that requires a truck driver to pass his or her driving exam within a certain number of attempts.[6]  As such, Swift argues that Mr. Atkinson's opinion is not reliable.  Furthermore, needing more than one attempt to pass her driving exam is not relevant to show later, after successfully completing the exam, that Ms. Getchel was incompetent or unsafe and further that Swift was negligent in hiring, training, and retaining her.  Based on its current understanding of the facts, the court finds that Mr. Atkinson's <u>opinion</u> is not relevant.  Assuming, without deciding, that the evidence itself somehow is relevant, a jury does not need expert testimony to assist in evaluating it.

---

[6]Mr. Atkinson testified that there are some states that limit the number of attempts a person may take the commercial driving test within a set time frame.  Mr. Atkinson did not know whether or not Ms. Getchel was affected by these restrictions.

**E. Swift's 2001 Compliance Review**

Swift argues that its June 24, 2001, compliance review, which occurred almost five years prior to the accident in question, is not relevant and therefore, Mr. Atkinson's opinion on Swift's conduct should be excluded.  Swift was reviewed subsequent to June 24, 2001, and received a satisfactory rating.  There is no evidence of any connection between the facts and circumstances of the accident and the 2001 compliance review.  Therefore, the court finds that Swift's 2001 compliance reviews are not relevant and Mr. Atkinson will not be permitted to give his opinion on this matter.

IT IS SO ORDERED.

Dated this  5th  day of November 2008, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-8-